IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

CASE NUMBER: 6:25-cv-2107

RONALD E. GILBERT,

     Plaintiff,

vs.

MID-AMERICA APARTMENT COMMUNITIES, INC.,
a foreign corporation, and
MID-AMERICA APARTMENTS, LTD,
a foreign limited partnership, d/b/a
MID-AMERICA APARTMENTS, L.P.,

     Defendant.

_____/

## **COMPLAINT**

**COMES NOW** Plaintiff, RONALD E. GILBERT ("Plaintiff" or "Mr. Gilbert"), by and through undersigned counsel, sues Defendants, MID-AMERICA APARTMENT COMMUNITIES, INC.  and MID-AMERICA APARTMENTS, LTD. d/b/a MID-AMERICA APARTMENTS, L.P. (collectively known as "Defendants" or "Mid-America"), and alleges:

1.    This is an action for employment discrimination and retaliation under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq.,

the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Florida Civil Rights Act of 1992 ("FCRA"), Chapter 760, Florida Statutes, arising from Defendants' discriminatory treatment, termination, and replacement of Plaintiff after he sustained a workplace injury and requested reasonable accommodations at Defendants' Seminole County, Florida operations.

## PARTIES

2.  Plaintiff RONALD E. GILBERT is a natural person and citizen of the State of Florida, residing in Orange County, Florida 32712.

3.  Defendant MID-AMERICA APARTMENT COMMUNITES, INC., is a foreign corporation with its principal place of business located at 6815 Poplar Avenue, Suite 500, Germantown, Tennessee 38138.

4.  Defendant MID-AMERICA APARTMENTS, LTD. d/b/a MID-AMERICA APARTMENTS, L.P. is a foreign limited partnership with its principal place of business located at 6815 Poplar Avenue, Suite 500, Germantown, Tennessee 38138.

5.  Defendant is a citizen of Tennessee for diversity purposes, as it is headquartered in Tennessee.

6.  At all times material hereto, Plaintiff was an "employee" and Defendants were each an "employer" and jointly "co-employers" within the meaning

of the ADA, ADEA, and FCRA.

7.     At all times material hereto, Defendants employed enough employees rendering Defendants liable under the claims raised in this Complaint.

**JURISDICTION AND VENUE**

8.     This Court has original federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 as this case involves claims arising under the laws of the United States, specifically the ADA, 42 U.S.C. § 12101 et seq., and the ADEA, 29 U.S.C. § 621 et seq.

9.     This Court has jurisdiction over Plaintiff's ADA claims pursuant to 42 U.S.C. § 12117(a), incorporating 42 U.S.C. § 2000e-5(f)(3).

10.    This Court has jurisdiction over Plaintiff's ADEA claims pursuant to 29 U.S.C. § 626(c).

11.    This Court has supplemental jurisdiction over Plaintiff's state law claims under the FCRA pursuant to 28 U.S.C. § 1367(a), as these claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

12.    Alternatively, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), as complete diversity exists between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and

(b)(2) because:

a.     Defendants are subject to personal jurisdiction in this district;

b.     A substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district;

c.     Plaintiff's employment was based in Seminole County, Florida, which is within this district;

d.     The discriminatory acts occurred in Seminole County, Florida;

e.     Plaintiff's workplace injury occurred in this district; an

f.     Defendants regularly conduct substantial business in this district.

14.     Venue is also proper pursuant to 42 U.S.C. § 2000e-5(f)(3) as the unlawful employment practices were committed within this judicial district.

15.     This Court also has general personal jurisdiction over Defendants as they conduct continuous, systematic, and substantial business in Florida, maintaining permanent employees, owning real property, and generating significant revenue from its Florida operations.

## ADMINISTRATIVE PREREQUISITES

16.     Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 1, 2024.

17.     Plaintiff's EEOC Charge alleged discrimination based on disability and age.

18.     Plaintiff's EEOC Charge was dual filed with the Florida Commission on Human Relations ("FCHR") pursuant to the work-sharing agreement between the EEOC and FCHR.

19.     On August 5, 2025, the EEOC issued a Dismissal and Notice of Rights, providing Plaintiff with the right to sue under federal law. See **Ex. 1** - Notice of Right to Sue.

20.     More than 180 days have passed since the filing of the charge, satisfying all administrative prerequisites under both federal law and Section 760.11, Florida Statutes.

21.     This action is timely filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue.

22.     All conditions precedent to bringing this action have been performed, occurred, or have been waived.

## FACTUAL ALLEGATIONS

### *Plaintiff's Employment in Florida*

23.     On or about April 15, 2022, Defendants hired Plaintiff as a Service Manager at one of its apartment communities located in Seminole County, Florida.

24.     Plaintiff's employment was based entirely in Florida, where he reported to work daily at Defendants' Seminole County property.

25.     Throughout his employment, Plaintiff successfully performed all

essential functions of his position and received positive performance evaluations from Defendants' Florida-based management.

26.    Plaintiff was a dedicated employee who consistently met or exceeded Defendants' legitimate performance expectations.

### *Plaintiff's Age*

27.    Plaintiff was born in 1963 and was 60 years old at the time of the discriminatory acts alleged herein.

28.    Despite his age, Plaintiff was fully capable of performing all essential functions of his position.

### *Workplace Injury in Florida*

29.    On November 8, 2023, while performing his assigned job duties at Defendants' Seminole County, Florida property, Plaintiff sustained an injury to his right shoulder.

30.    Specifically, Plaintiff injured his shoulder while performing maintenance work that was required as part of his Service Manager duties at Defendants' Florida location.

31.    The injury occurred during the course and scope of Plaintiff's employment with Defendants in Seminole County, Florida.

32.    Plaintiff promptly reported the workplace injury to Defendants' Florida-based management and sought medical treatment.

33. Due to the the injury, Plaintiff's Florida-based orthopedic surgeon determined that corrective surgery was necessary.

34. On December 29, 2023, Plaintiff underwent shoulder surgery in Florida to repair the work-related injury.

35. Following surgery, Plaintiff diligently participated in physical therapy and rehabilitation in Florida to facilitate his recovery and return to work.

***Medical Clearance and Request for Accommodation***

36. On February 5, 2024, Plaintiff's treating physician in Florida medically cleared him to return to work with temporary restrictions.

37. These restrictions would not have prevented Plaintiff from performing the essential functions of his Service Manager position.

38. On February 5, 2024, Plaintiff promptly provided Defendants' with:

a. Written medical clearance to return to work;

b. Detailed temporary restrictions from his physician;

c. Anticipated duration of restrictions (6-8 weeks);

d. Confirmation he could perform essential job functions.

39. Plaintiff explicitly requested reasonable accommodations, including:

a. Temporary assistance with tasks requiring heavy lifting;

b. Delegation of overhead work to maintenance staff he supervised;

c. Use of mechanical aids for lifting when needed;

d.      Modified duty focusing on supervisory/administrative functions.

*Defendant's Discriminatory Response*

40.     Despite Plaintiff's ability to perform the essential functions of his position with reasonable accommodations, Defendants' Florida management refused to engage in any interactive process.

41.     On February 5, 2024, Defendants' Florida-based Human Resources representative informed Plaintiff that Defendants would not allow him to return to work with any restrictions whatsoever.

42.     Defendants' representative specifically stated that Plaintiff could only return when he was 100% recovered or 100% healed with absolutely no restrictions.

43.     Defendants made no effort to:

a.      Discuss potential accommodations with Plaintiff;

b.      Determine whether accommodations would pose an undue hardship;

c.      Explore alternative positions or modified duties;

d.      Engage in the interactive process required by federal law.

44.     Defendants' refusal was categorical and immediate, without any individualized assessment of Plaintiff's ability to perform his job functions.

*Disparate Treatment of Younger Employee*

45.     During the relevant time period, Defendants employed another Service Technician at its Seminole County properties who was much younger than Plaintiff.

46.    In approximately October 2023, another younger employee, whose name will be revealed through discovery, suffered a work injury that required medical treatment.

47.    The employee who suffered a work injury in October 2023 was cleared to return to work with temporary lifting restrictions similar to Plaintiff's.

48.    This other employee was never told he needed to be "100% recovered" before returning to work.

49.    The disparate treatment between Plaintiff (age 60, denied accommodation) and John the other young and similarly situated employee demonstrates discriminatory animus.

*Termination and Replacement*

50.    After denying Plaintiff's request for accommodation, Defendants left Plaintiff in an impossible position: unable to return to work despite being medically cleared with minor restrictions.

51.    On February 24, 2024, merely 19 days after Plaintiff requested accommodations, Defendants' Florida management informed Plaintiff that his Service Manager position had been filled.

52.    Defendants terminated Plaintiff's employment and replaced him with another much younger employee.

53.    The timing of Plaintiff's termination—19 days after requesting

accommodation—demonstrates both discriminatory and retaliatory intent.

54.    Defendants' stated reason for termination (position needed to be filled) was pretextual because:

a.    Plaintiff was ready and able to return immediately with minimal accommodations;

b.    The position had been covered for nearly three months during Plaintiff's surgery and recovery;

c.    Defendants could have allowed Plaintiff to return with temporary restrictions;

d.    The younger employee with restrictions was not replaced.

***Damages***

55.    As a direct and proximate result of Defendants' unlawful discrimination and retaliation, Plaintiff has suffered:

a.    Lost wages from February 24, 2024, to present (ongoing);

b.    Lost employment benefits including health insurance and retirement contributions;

c.    Severe emotional distress, anxiety, and depression;

d.    Loss of professional standing and career opportunities;

e.    Financial hardship and stress on family relationships;

f.    Loss of dignity and self-worth after being discarded following a workplace injury.

56. Defendants' conduct was intentional, malicious, and/or showed reckless indifference to Plaintiff's federally protected rights.

## <u>COUNT I</u>
## DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

57. Plaintiff realleges and incorporates by reference paragraphs 1 through 55 as if fully set forth herein.

58. The ADA prohibits covered employers from discriminating against qualified individuals on the basis of disability.

59. At all relevant times, Plaintiff had a disability within the meaning of the ADA:

a. He had a physical impairment (shoulder injury requiring surgery) that substantially limited major life activities including lifting, reaching, and performing manual tasks;

b. He had a record of such impairment; and/or

c. He was regarded by Defendants as having such an impairment.

60. Plaintiff was a qualified individual who could perform the essential functions of the Service Manager position with or without reasonable accommodation.

61. Defendants discriminated against Plaintiff on the basis of his disability by:

a. Refusing to make reasonable accommodations to his known physical limitations;

b. Failing to engage in the interactive process;

c. Denying him employment opportunities based on his need for accommodation;

d. Terminating his employment because of his disability;

e. Replacing him with a non-disabled individual;

f. Treating him less favorably than non-disabled employees.

62. Defendants' actions were intentional and taken with malice or reckless indifference to Plaintiff's federally protected rights.

63. As a direct result of Defendants' violations, Plaintiff suffered damages including lost wages, lost benefits, and emotional distress.

**WHEREFORE**, Plaintiff demands judgment against Defendants for:

a. Back pay and lost benefits;

b. Front pay in lieu of reinstatement;

c. Compensatory damages for emotional distress and mental anguish;

d. Prejudgment and post-judgment interest;

e. Attorneys' fees and costs pursuant to 42 U.S.C. § 12205;

f. Such other relief as this Court deems just and proper.

## COUNT II
### FAILURE TO ACCOMMODATE IN VIOLATION OF THE

## AMERICANS WITH DISABILITIES ACT

64.    Plaintiff realleges and incorporates by reference paragraphs 1 through 56 as if fully set forth herein.

65.    The ADA requires employers to make reasonable accommodations for known physical limitations of otherwise qualified individuals with disabilities, unless doing so would impose an undue hardship.

66.    Plaintiff was a qualified individual with a disability who could perform the essential functions of his position with reasonable accommodation.

67.    Plaintiff requested reasonable accommodations for his known physical limitations.

68.    The requested accommodations were reasonable and would not have imposed any undue hardship on Defendants, a large company with over 500 employees.

69.    Defendants failed to provide reasonable accommodations and failed to engage in the interactive process mandated by the ADA.

70.    Defendants' blanket "100% healed" policy violates the ADA's individualized assessment requirement.

71.    As a direct result of Defendants' failure to accommodate, Plaintiff lost his employment and suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants for:

a.      Back pay and lost benefits;

b.      Front pay in lieu of reinstatement;

c.      Compensatory damages for emotional distress and mental anguish;

d.      Prejudgment and post-judgment interest;

e.      Attorneys' fees and costs pursuant to 42 U.S.C. § 12205;

f.      Such other relief as this Court deems just and proper.

<u>**COUNT III**</u>
**AGE DISCRIMINATION IN VIOLATION OF THE**
**AGE DISCRIMINATION IN EMPLOYMENT ACT**

72.     Plaintiff realleges and incorporates by reference paragraphs 1 through 56 as if fully set forth herein.

73.     The ADEA prohibits employers from discriminating against individuals who are 40 years of age or older.

74.     At all relevant times, Plaintiff was 60 years old and within the protected class.

75.     Plaintiff was qualified for his position and meeting Defendants' legitimate performance expectations.

76.     Defendants discriminated against Plaintiff because of his age by:

a.      Treating him less favorably than a substantially younger employee with respect to accommodations;

b.      Terminating his employment while accommodating the younger employee;

c.      Replacing him with a substantially younger individual;

d.      Applying its "100% healed" policy discriminatorily based on age.

77.     But for Plaintiff's age, Defendants would not have refused accommodation and terminated his employment.

78.     Defendants' age discrimination was willful, as it knew or showed reckless disregard for whether its conduct violated the ADEA.

79.     As a direct result, Plaintiff suffered damages including lost wages and benefits.

**WHEREFORE**, Plaintiff demands judgment against Defendants for:

a.      Back pay and lost benefits;

b.      Front pay in lieu of reinstatement;

c.      Liquidated damages for willful violation;

d.      Prejudgment and post-judgment interest;

e.      Attorneys' fees and costs pursuant to 29 U.S.C. § 626(b);

f.      Such other relief as this Court deems just and proper.

### COUNT IV
### RETALIATION IN VIOLATION OF THE
### AMERICANS WITH DISABILITIES ACT

80.     Plaintiff realleges and incorporates by reference paragraphs 1 through 56 as if fully set forth herein.

81.     The ADA prohibits retaliation against individuals who request

reasonable accommodations or assert their rights under the ADA.

82.    Plaintiff engaged in protected activity by requesting reasonable accommodations for his disability on February 5, 2024.

83.    Defendants knew of Plaintiff's protected activity.

84.    Defendants took materially adverse action by terminating Plaintiff's employment on February 24, 2024.

85.    The close temporal proximity of 19 days between the accommodation request and termination establishes causation.

86.    But for Plaintiff's protected activity, Defendants would not have terminated his employment.

87.    As a direct result of Defendants' retaliation, Plaintiff suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants for:

a.    Back pay and lost benefits;

b.    Front pay in lieu of reinstatement;

c.    Compensatory damages for emotional distress and mental anguish;

d.    Prejudgment and post-judgment interest;

e.    Attorneys' fees and costs pursuant to 42 U.S.C. § 12205;

f.    Such other relief as this Court deems just and proper.

<u>**COUNT V**</u>
**DISABILITY DISCRIMINATION IN VIOLATION OF THE**
**FLORIDA CIVIL RIGHTS ACT**

88.    Plaintiff realleges and incorporates by reference paragraphs 1 through 56 as if fully set forth herein.

89.    The FCRA prohibits disability discrimination.

90.    Plaintiff had a disability, was qualified for his position, and could perform essential functions with reasonable accommodation.

91.    Defendants discriminated against Plaintiff based on his disability in violation of the FCRA.

92.    Defendants' conduct was undertaken with malice or reckless indifference to Plaintiff's state law rights.

93.    As a direct result, Plaintiff suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants for:

a.    Back pay and lost wages;

b.    Front pay or reinstatement;

c.    Compensatory damages;

d.    Prejudgment interest;

e.    Attorneys' fees and costs under § 760.11(5);

f.    Such other relief as this Court deems just and proper.

### DEMAND FOR NON-JURY TRIAL

Plaintiff hereby demands a non-jury trial on all issues so triable.

**DATED:** November 3, 2025

Respectfully submitted,

By: */s/Robert Twombly*
Robert Twombly, Esquire
FBN: 0060127


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been

delivered to all the Parties on the Court's e-service list via the Court's e-portal on

November 03, 2025.

Respectfully submitted,

**WHITE & TWOMBLY, P.A.**
Counsel for Plaintiff
9999 NE 2nd Avenue, Suite 306
Miami Shores, Florida 33138
Telephone: (786) 502-2038
robert@whitetwombly.com
david@whitetwombly.com
paralegalryt@whitetwombly.com

By: */s/Robert Twombly*
Robert Twombly, Esquire
FBN: 0060127